# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Elaine E. Bucklo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 6421 | **DATE** | 12/16/2004 |
| **CASE TITLE** | Jackson vs. Xerox Corp. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and order granting defendant's motion for summary judgment on all counts. Judgment is, therefore, entered in favor of defendant and against plaintiff. Any pending motion in this case is terminated as moot and pretrial conference set for this day and trial set for 1/4/05 are now vacated.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 2 number of notices | **Document Number** |
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | DEC 17 2004 date docketed | 57 |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | JKM docketing deputy initials | |
| ✓ | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | 12/16/2004 date mailed notice | |
| | courtroom MPJ deputy's initials | Date/time received in central Clerk's Office | MPJ mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**BEATRICE JACKSON**     )
                         )
    Plaintiff,         )
                         )
v.                       )    No. 03 C 6421
                         )
**XEROX CORPORATION**    )
                         )
    Defendant.        )
                         )

DOCKETED
DEC 17 2004

## MEMORANDUM OPINION AND ORDER

Beatrice Jackson was employed by defendant Xerox Corp. ("Xerox") starting in October 1968, with employment as a sales account manager from March 1999 until her termination on June 23, 2003. At the time of her termination, Ms. Jackson was 53 years old. Ms. Jackson alleges that her termination violated the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.* (Count I). Ms. Jackson also alleges that her termination was unlawful retaliation for her internal and external complaints about age discrimination, also in violation of the ADEA (Count II). Ms. Jackson also alleges that her termination violated the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.* (Count III), claiming that Xerox, in its termination decision, unlawfully considered her lack of sales production while she was on FMLA leave. Finally, Ms. Jackson alleges state law claims that Xerox improperly withheld commissions due her (Count IV), that she is due attorney's fees in connection with those commissions (Count V), and that Xerox has been unjustly enriched by refusing to pay those

commissions (Count VI). Xerox moves for summary judgment on all counts. I grant that motion, as explained below.

I.

Summary judgment is appropriate where the record and affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Lexington Ins. Co. v. Rugg & Knopp*, 165 F.3d 1087, 1090 (7th Cir. 1999); Fed. R. Civ. P. 56(c). I must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in favor of that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Counts I and II allege that Ms. Jackson's termination violated the ADEA, either because of age discrimination or because of retaliation for Ms. Jackson's complaints about the alleged discrimination. Xerox argues that Ms. Jackson cannot establish that age discrimination or retaliation played a role in her termination. As Ms. Jackson does not present direct evidence to support her claims, she must proceed under the indirect method of proof established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). To establish a prima facie case of age discrimination under this analysis, Ms. Jackson must show that (1) she was a member of a protected class; (2) she was meeting Xerox's legitimate business expectations; (3) she suffered an adverse employment action; and (4) similarly-situated employees, not in the protected class, were more favorably treated. *Griffin v. Potter*, 356 F.3d

2

824, 828 (7th Cir. 2004). To establish a prima facie case of retaliation, Ms. Jackson must establish that (1) she engaged in statutorily protected activity; (2) she was meeting Xerox's legitimate business expectations; (3) she suffered an adverse employment action; and (4) similarly-situated employees who did not engage in the protected activity were more favorably treated. *Id.* Xerox argues that both claims must fail, as Ms. Jackson cannot establish the second or fourth prongs of either analysis. I agree.

Xerox first contends that Ms. Jackson was not meeting its legitimate business expectations at the time of her termination. Ms. Jackson argues that, despite Xerox's statement that Ms. Jackson's sales figures were not acceptable, she was satisfactorily performing. The record shows that Xerox considered Ms. Jackson's sales performance unacceptably low. Ms. Jackson received a warning concerning her sales from her supervisor, Walter Leverett, in May 2002. Ms. Jackson and Mr. Leverett had monthly meetings, starting in May 2002, to discuss Ms. Jackson's progress and performance. At her mid-2002 review in September, Ms. Jackson was informed that she was only at 57.2 percent of her sales quota. On October 1, 2002, Mr. Leverett issued a written warning to Ms. Jackson. At the end of November 2002, Ms. Jackson was at 24.9 percent of her sales plan, and did not reach 100 percent in 2002. Xerox also had to make accommodations, or credits, of more than $45,000 to Ms. Jackson's customers in 2002.

In January 2003, Ms. Jackson was given a 90-day probation period due to her failure to achieve her sales goals. When she was placed on probation, Ms. Jackson was given specific expectations for her sales levels, as well as specific times to meet with Mr. Leverett to review her progress. Ms. Jackson was also notified that failure to meet those sales levels could result in termination. Ms. Jackson's probation period was extended, to the end of April 2003, because of time Ms. Jackson was on temporary disability. Sales representatives, including Ms. Jackson, were required each month to make 80 face-to-face sales calls, perform five demonstrations, obtain 15 new prospects, and make 20 proposals. In 2002, Ms. Jackson had a monthly average of 48 sales calls, less than one demonstration, five prospects, and less than 20 proposals. In the first quarter of 2003 (measured across the months of January, February, and April), Ms. Jackson had a monthly average of 72 sales calls, eight demonstrations, slightly more than nine prospects, and slightly more than nine proposals.

In the face of this evidence of her poor sales performance, Ms. Jackson argues that she was satisfactorily performing her job and would have met her sales goals but for Xerox's interference. However, Ms. Jackson provides no evidence or argument concerning Xerox's alleged interference other than her own conclusory and speculative statements. These statements are insufficient to raise an issue of material facts as to Ms. Jackson's performance. *Mills v. First Fed. Sav. & Loan Assoc. of Belvidere*, 83 F.3d 833, 843 (7th

4

Cir. 1996). This court is not required to search through the record in search of other evidence which could support her claims. *See, e.g., Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003)("judges are not like pigs, hunting for truffles buried in briefs").

Xerox also argues that Ms. Jackson cannot identify any similarly-situated younger employees who were more favorably treated. As an initial matter, the relevant adverse employment action here is termination. Ms. Jackson attempts to add another adverse employment action: the timing of her placement on and the escalation of a progressive disciplinary "tract." However, Xerox's disciplinary warnings and plans under this policy do not qualify as adverse employment actions. *Oest v. Ill. Dept. of Corrections*, 240 F.3d 605, 613 (7th Cir. 2001)(progressive discipline, ending in termination, not adverse employment action). Like the plaintiff in *Oest*, Ms. Jackson could have taken the warnings she received from Mr. Leverett as incentive to improve her sales performance; her termination was not inevitable once she received the first warning. *Id.*

Ms. Jackson's response brief does not clearly indicate who she considers to have been similarly situated to her, yet were more favorably treated. She does mention four individuals, all under the age of 40, who might qualify: Chianna Coleman, Jennifer Laird, Jeff Berman, and Debbie Mahoney. To establish that an individual was similarly situated, Ms. Jackson must show that they were alike in all material respects. *Peele v. County Mut. Ins. Co.*, 288 F.3d

5

319, 330 (7th Cir. 2002). The individual and Ms. Jackson must have had the same supervisor, been held to the same standards, and have engaged in similar conduct "without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Id.*

Ms. Jackson at all times bears the burden of establishing both similar circumstances and more favorable treatment. *Reeves v. Sanderson Plumbing Prod's, Inc.*, 530 U.S. 133, 143 (2000). She has failed to meet that burden. First, Ms. Jackson's brief is nearly devoid of any factual or legal argument that these individuals are similarly situated or were treated more favorably. Second, even assuming Ms. Laird, Mr. Berman, and Ms. Mahoney were similarly situated to Ms. Jackson, they were not more favorably treated. Mr. Berman and Ms. Mahoney were both terminated after being warned about their poor sales performance, and Ms. Laird voluntarily resigned shortly after being issued a warning letter about her own performance. *See Peele*, 288 F.3d at 331. Finally, Ms. Jackson is unable to show that Ms. Coleman was similarly situated. Although Ms. Coleman did report to Mr. Leverett, and did receive a warning letter about her sales performance in October 2002, the record shows that Ms. Coleman actually had sales performance above expectations earlier in 2002, unlike Ms. Jackson. Ms. Jackson does not present sufficient evidence to establish either that she was meeting Xerox's legitimate business expectations or that similarly-situated employees were more favorably treated.

6

Ms. Jackson had more than 34 years of service with Xerox, mostly in positions other than as a sales account manager, with apparently good performance in those positions. While termination after such an extended tenure may be a harsh decision, the record reflects that Ms. Jackson was not performing up to Xerox's expectations in a sales position. Xerox's motion for summary judgment with respect to Counts I and II is granted.

II.

Count III alleges that Ms. Jackson's termination violated the FMLA. Xerox argues that Ms. Jackson cannot establish that her termination was motivated by the FMLA leave she took in March 2003. Claims of retaliatory termination under the FMLA are analyzed in the same manner as retaliation claims under other employment laws. *Buie v. Quad/Graphics, Inc.*, 366 F.3d 496, 503 (7th Cir. 2004). To establish a prima facie case, Ms. Jackson must show (1) she engaged in conduct protected by the FMLA; (2) she was performing her job satisfactorily; (3) she was subjected to an adverse employment action; and (4) similarly-situated employees who did not engage in the protected conduct were more favorably treated. *Id.* Xerox argues that Ms. Jackson cannot meet either the second or fourth prongs of this analysis and, for the reasons stated above, I agree.

While Ms. Jackson provides a summary of the intent and effects of the FMLA, she presents no argument to oppose Xerox, other than the conclusory statement that Xerox unlawfully held her FMLA leave against her in deciding to terminate her. While Ms. Jackson

7

suggests that further argument and support can be found in her Rule 56.1 statement of facts, I need not scour the record and briefings to make Ms. Jackson's arguments for her. *See Little v. Cox's Supermarkets*, 71 F.3d 637, 641 (7th Cir. 1995)("A court need not make the lawyer's case."). Xerox's motion for summary judgment with respect to Count III is granted.

## III.

Count IV alleges that Xerox unlawfully kept commissions due Ms. Jackson, in violation of their wage agreement and the Illinois Wage Payment and Collection Act ("Wage Act"), 820 Ill. Comp. Stat. 115 *et seq.* Count V alleges that Ms. Jackson is also due attorney's fees in relation to her claim for the commissions, pursuant to the Attorney Fees in Wage Actions Act ("Fees Act"), 705 Ill. Comp. Stat. 225/1. The Wage Act provides a cause of action against an employer who unlawfully withholds wages, defined as "any compensation owed an employee by an employer pursuant to an employment contract or agreement between the [two] parties." *Byung Moo Suh v. Target Mktg. Sys., Inc.*, No. 1-03-2745, 2004 WL 2192408 (Ill. App. Ct. Sept. 30, 2004). Ms. Jackson admits that she had an agreement with Xerox that covered commissions, that the agreement provided that employees would receive commissions only for activity in the last full month worked, and that she did not work the entire month of June 2003. Ms. Jackson claims, however, that she is still due commissions for business generated in June 2003. This allegation runs counter to the agreement and Ms. Jackson's own

8

admissions; her contract explicitly states that she is not due these commissions. Also, the Fees Act provides that plaintiffs may recover attorneys' fees expended to claim wages "earned and due and owing." 705 ILL. COMP. STAT. 225/1. As no wages are due Ms. Jackson, according to the terms of her contract, her claim for attorneys' fees also fails. *See, e.g., Caruso v. Bd. of Trustees*, 473 N.E.2d 417, 420 (Ill. App. Ct. 1984)(every particular of the Fees Act must be complied with for recovery of attorneys' fees).

Finally, Count VI alleges that Xerox has been unjustly enriched by keeping the commissions Ms. Jackson claims are due her. Ms. Jackson admits that she and Xerox had a wage agreement that governed her wages and commissions. Where an explicit contract existed between the parties, no claim for unjust enrichment (based on an implied contract) can lie. *Hartigan v. E&E Hauling, Inc.*, 607 N.E.2d 165, 177 (Ill. 1992). Xerox's motion for summary judgment with respect to Counts IV, V, and VI is granted.

**ENTER ORDER:**

*/s/ Elaine E. Bucklo*

**Elaine E. Bucklo**
United States District Judge

Dated: December 16, 2004

9